UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GAY L. TAPPON,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　　Defendant. | Case No. C13-1511-TSZ-BAT<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff Gay L. Tappon seeks review of the denial of her Supplemental Security Income application. She contends the ALJ erred by (1) finding that she did not meet or equal Listing 12.04, (2) either rejecting or failing to fully account for medical opinions, (3) rejecting lay witness testimony, and (4) failing to include all limitations in the residual functional capacity ("RFC") assessment and the hypothetical posed to the vocational expert ("VE"). Dkt. 19 at 1. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings.

**BACKGROUND**

Ms. Tappon is currently 55 years old, has a high school diploma and some college

REPORT AND RECOMMENDATION - 1

coursework and additional certification, and has worked in cosmetic sales and as a bank teller.[1]

On March 4, 2008, she protectively applied for benefits, alleging disability as of March 4, 2008.[2] Tr. 270-72.  Her application was denied initially and on reconsideration.  Tr. 163-66, 168-70. The ALJ conducted a hearing on August 3, 2010 (Tr. 88-133), and subsequently found Ms. Tappon not disabled.  Tr. 139-52.  The Appeals Council granted Ms. Tappon's request for review, and remanded the case to the ALJ for further development of the record and reassessment of various aspects of the case.  Tr. 158-62.

The ALJ conducted a second hearing on June 19, 2012 (Tr. 46-87), subsequently finding Ms. Tappon not disabled.  Tr. 20-38.  As the Appeals Council denied Ms. Tappon's request for review, the ALJ's decision is the Commissioner's final decision.  Tr. 1-5.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[3] the ALJ found:

**Step one:**  Ms. Tappon did not engage in substantial gainful activity since March 4, 2008, the application date.

**Step two:**  Ms. Tappon's affective disorder, panic disorder with agoraphobia, substance abuse disorder, and status-post left elbow fracture are severe.

**Step three:**  These impairments did not meet or equal the requirements of a listed impairment.[4]

**RFC:**  Ms. Tappon has the RFC to perform light work, with the following exceptions: she is limited to frequent reaching and grasping with the left upper extremity; she can understand, remember, and carry out simple instructions; she has average ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis within customary tolerances of employers' rules regarding sick leave and absence; and she can make judgments on simple work-related decisions and can respond appropriately to supervision and co-workers, and can deal with changes in a stable work

---

[1] Tr. 93, 289, 295, 299.
[2] Ms. Tappon amended her alleged onset date to March 4, 2008, at the second administrative hearing.  Tr. 50.
[3] 20 C.F.R. §§ 404.1520, 416.920.
[4] 20 C.F.R. Part 404, Subpart P, Appendix 1.

REPORT AND RECOMMENDATION - 2

in environment; and has no limits on dealing with the general public in the workplace.

**Step four:** Ms. Tappon has no past relevant work.

**Step five:** Because there are jobs that exist in significant numbers in the national economy that Ms. Tappon can perform, she is not disabled.

Tr. 22-38.

## DISCUSSION

**A.    Listing 12.04**

Ms. Tappon argues that the ALJ erred at step three in finding that she did not meet or equal Listing 12.04. At step three of the sequential evaluation of disability, the ALJ considers whether one or more of a claimant's impairments meets or equals an impairment listed in the regulations. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. The Listing of Impairments (the "listings") describes specific impairments of each of the major body systems "which are considered severe enough to prevent a person from doing any gainful activity." *Tackett v. Apfel,* 180 F.3d 1094, 1099 (9th Cir. 1999); *see* 20 C.F.R. § 404.1525. If a claimant meets or equals a listing, the claimant is found disabled without further inquiry.

Listing 12.04 sets out the criteria for affective disorders, which are divided into requirements listed in "paragraph A," "paragraph B" and "paragraph C." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. A claimant meets Listing 12.04 by satisfying the requirements of paragraph A and paragraph B, or paragraph C alone. *Id*.

The ALJ found that Ms. Tappon did not meet the requirements of paragraph B because she had only mild restriction in her activities of daily living, moderate difficulties in social functioning and concentration, persistence, and pace, and 1-2 episodes of decompensation (each of extended duration) secondary to substance abuse. Tr. 23-24. He also found that Ms. Tappon did not meet any of paragraph C requirements. Tr. 24.

REPORT AND RECOMMENDATION - 3

Ms. Tappon contends that the ALJ ignored evidence showing that she is more limited as to daily activities, social functioning, and concentration, persistence, and pace, and that she meets the paragraph C requirements due to two hospitalizations in 2006-2007, and her living environment (living with her parents and dependent on them for daily assistance and transportation). Dkt. 19 at 2-7.

Ms. Tappon has not relied on any medical opinions specifically addressing the Listing 12.04 requirements; the only medical opinion addressing Listing 12.04 indicates that Ms. Tappon does not meet the listing. *See* Tr. 715-28. Instead, Ms. Tappon points to her testimony and statements she made to providers regarding various daily activities, social functioning, and concentration limitations as evidence showing that she is more limited than the ALJ found. Dkt. 19 at 2-6. But the ALJ discounted the credibility of Ms. Tappon's subjective testimony, and Ms. Tappon does not challenge that finding. Tr. 26-29. Accordingly, references to her own statements do not establish that the ALJ erred in failing to credit that evidence when assessing the paragraph B criteria.

Furthermore, Ms. Tappon has not shown that the ALJ erred in finding that she did not meet the paragraph C criteria. The hospitalizations she relies upon occurred prior to the alleged disability onset, do not number three in one year, and were related to substance abuse rather than an exacerbation of mental symptoms, and thus do not constitute "repeated episodes of decompensation, each of extended duration" for purposes of either the paragraph B or paragraph C criteria. *Compare* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C(4) *with* Dkt. 19 at 6. Furthermore, although Ms. Tappon relies on her own statements and statements of her father to argue that the ALJ erred in failing to find that she had demonstrated an inability to function outside a highly supportive living arrangement, the ALJ provided reasons to discount both Ms.

REPORT AND RECOMMENDATION - 4

Tappon's testimony and the testimony of her father. Tr. 26-29, 36. Ms. Tappon did not challenge the ALJ's adverse credibility determination as to her own testimony, and has not shown that the ALJ erred in discounting her father's testimony either (for reasons explained in the following section, *infra*). Accordingly, Ms. Tappon has not shown that the ALJ erred in finding that she did not meet the paragraph C criteria.

B.     William Warner's Testimony

Ms. Tappon challenges the ALJ's assessment of her father's testimony. William Warner testified at the first administrative hearing, describing his observations of Ms. Tappon's limitations. Tr. 113-20. The ALJ noted Mr. Warner's potential for bias, because Ms. Tappon lived with Mr. Warner and thus Mr. Warner's household budget would have benefited if Ms. Tappon were found disabled. Tr. 36. The ALJ found that Mr. Warner's description of Ms. Tappon's abilities undermined her allegations of inability to lift items, attend to a task, or do limited light work. *Id*. The ALJ also found that Mr. Warner's contention that Ms. Tappon has a disabling fear of crowds is inconsistent with her ability to attend church, maintain a relationship with her boyfriend and a friend, and participate in groups. *Id*.

Ms. Tappon contends that Mr. Warner's familial relationship was not a germane reason to discount his testimony. But even accepting this argument as true, Ms. Tappon has not shown that the ALJ's other reasons were not germane: it is unnecessary for Mr. Warner's testimony to demonstrate that Ms. Tappon possesses abilities transferable to a work setting (Dkt. 19 at 16), because the ALJ cited Mr. Warner's testimony as *inconsistent* with Ms. Tappon's self-described limitations, particularly as to lifting, following a routine, or interacting in groups. Tr. 36. This is a germane reason to discount Mr. Warner's testimony.

C.     Medical Opinions

REPORT AND RECOMMENDATION - 5

Ms. Tappon argues that although the ALJ purported to give "significant weight" to the opinions of consultative examiners Katrina L. Higgins, Psy.D., and Mary Anderson, Psy.D., he did not actually incorporate all of the limitations they found, and did not provide an adequate rationale for doing so. Dkt. 19 at 8-9. Ms. Tappon also contends that the ALJ erred in discounting the opinion of consultative examiner Victoria McDuffee, Ph.D., because she indicated that she expected Ms. Tappon's impairments to last six months. Dkt. 19 at 9-10. Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). Each provider's opinion will be addressed in turn.

1. Dr. Higgins

Dr. Higgins evaluated Ms. Tappon in November 2011, and provided the following functional assessment:

> Ms. Tappon appears to have adequate cognitive ability and judgment to manage her own funds. She is managing her own [activities of daily living] as well as those of her mother and brother. Based on today's assessment, she could be expected to understand, remember, and follow simple instructions. She will struggle with more complex instructions due to slow processing and poor problem solving. She will take longer to solve problems and may not take time to reason out complex situations.
>
> She reports social activities occurring 2-3 times a week. While she was slightly withdrawn during today's evaluation her behavior was not inappropriate in any way and she could be expected to interact appropriately with supervisors, coworkers and customers.
>
> Ms. Tappon appears to have low frustration tolerance and poor perseverance. She may give up on tasks she finds too difficult or complicated. She may work at a slower than average pace. She may have higher than average absenteeism. A part-time schedule may help to alleviate some of these issues. She should not be expected to make work-related decisions of any importance without supervisions. She would be able to handle small fluctuations in normal daily routine.

REPORT AND RECOMMENDATION - 6

Tr. 990-91.  The ALJ gave "significant weight" to most of Dr. Higgins's opinion, but less weight to the portion where she opined that Ms. Tappon's limitations would be alleviated by part-time work, because the ALJ's RFC, "limiting her to simple tasks[,] alleviates [Dr. Higgins's] concerns about the claimant's frustration with difficult or complex tasks, or work at a slower pace."  Tr. 32.

Ms. Tappon argues that the ALJ's purported accommodation, by limiting her to simple tasks, does not actually address all of Dr. Higgins's opinion, because her opinions regarding pace and attendance were not specifically linked to the complexity of task, contrary to the Commissioner's summary.  *See* Dkt. 20 at 13 ("Dr. Higgins explicitly stated that Plaintiff was able to understand and follow simple instructions, but would struggle[] with pace, frustration, and perseverance when confronted with complex tasks.").  Dr. Higgins explicitly linked Ms. Tappon's low frustration tolerance with complex tasks, but did not indicate that her deficits as to pace and attendance were related to the complexity of the work task; instead she suggested that they were related to a full-time work schedule.  Tr. 991.  Thus, it appears that the ALJ simply assumed, without the support of substantial evidence, that his RFC assessment would alleviate the deficits identified in Dr. Higgins's opinion.  Because it is not clear that the ALJ's RFC assessment is consistent with Dr. Higgins's opinion, on remand the ALJ shall reassess Dr. Higgins's opinion and either credit it or provide specific, legitimate reasons to discount it.

    2.    Dr. Anderson

Dr. Anderson evaluated Ms. Tappon in August 2008, finding in relevant part:

> In a work-like setting, the claimant would have difficulty doing repetitive work, learning new things (unless she wrote them down), her social interaction would be variable depending on her mood, and her physical limitations would also cause her difficulties in terms of writing or typing.
>
> …

REPORT AND RECOMMENDATION - 7

> Based on the findings of this writer, the claimant does not appear to be impaired in either her ability to reason or understand.  These may change depending upon how stable her bipolar is at any given moment. Her memory and persistence both fluctuate and are likely compromised due to her depression.  Her social interaction will also depend on her mood. If she is happy she will be fine, otherwise she will tend to isolate.  She reports that her ability to adapt to others or to be flexible also depends on the situation, and she is likely to not do well with unexpected changes.

Tr. 708.  The ALJ gave "significant weight" to most of Dr. Anderson's opinion, but less weight to her findings that Ms. Tappon would have difficulty doing repetitive work and would have writing/typing difficulties because those findings were "largely based" on Ms. Tappon's non-credible self-report and were inconsistent with her self-described ability to cook, clean, and shop every day.  Tr. 34.   The ALJ also noted that Ms. Tappon was able to follow a three-step command, count by fours, and follow conversation during Dr. Anderson's evaluation, which further undermined Dr. Anderson's finding that she could not perform repetitive work.  *Id*.

Ms. Tappon argues that Dr. Anderson provided a "detailed review of [her] medical, work, and social history as well as a review of medical records" (Dkt. 19 at 9), which support her conclusions and suggest that the ALJ should not have discounted them.  But the ALJ pointed to specific aspects of Dr. Anderson's opinion that contradict her conclusion, namely her mental status examination findings and her report of daily activities (Tr. 706-07), in addition to her reliance on Ms. Tappon's non-credible self-report.  This is the type of conflict that an ALJ properly considers when assessing a medical opinion, and Ms. Tappon has not shown that the ALJ's reasoning was unreasonable here.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible."); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (rejecting physician's opinion due to discrepancy or

REPORT AND RECOMMENDATION - 8

contradiction between opinion and the physician's own notes or observations is "a permissible determination within the ALJ's province").

### 3. Dr. McDuffee

Dr. McDuffee evaluated Ms. Tappon in October 2011 and completed a DSHS form opinion. Tr. 1030-39. Dr. McDuffee indicated that Ms. Tappon was a "[g]ood candidate for return to employment" and that she estimated that Ms. Tappon would continue to be as impaired as found in the opinion for a maximum of six months. Tr. 1033. The ALJ gave "significant weight" to the portion of Dr. McDuffee's opinion indicating that Ms. Tappon can perform simple tasks and return to work, but discounted the portion of the opinion suggesting that Ms. Tappon had some limitations that would preclude work, given that they did not meet the durational requirement. Tr. 32-33.

Ms. Tappon argues that Dr. McDuffee's time limit "does not make her conclusions inaccurate or in any way unworthy of weight. Instead, it provides information regarding at least six months and combines with information prior to and after her report to confirm the twelve month required duration of Ms. Tappon's condition." Dkt. 19 at 10. Ms. Tappon cites no specific "information prior to and after her report" that confirms the continued, twelve-month existence the limitations found by Dr. Duffee. *Id.* Dr. McDuffee's opinion does not on its own establish limitations that meet the twelve-month durational requirement of 42 U.S.C. § 1382c(a)(3)(A), and Ms. Tappon has not cited other evidence that combines to meet that requirement. Thus, the ALJ did not err in discounting Dr. McDuffee's opinions to the extent that she found them to be temporary. *See, e.g.*, *McDonnell v. Astrue*, 2013 WL 210067, at \*4 (E.D. Wash. Jan. 18, 2013) (affirming an ALJ's rejection of a medical opinion because, *inter alia*, the evaluator "opined that Plaintiff's impairments would last only a maximum of nine months, well

REPORT AND RECOMMENDATION - 9

short of the one-year durational requirement in social security disability cases").

**D.      RFC Assessment**

Ms. Tappon reiterates some of the arguments addressed in the previous section, *supra*, in arguing that the ALJ's RFC assessment fails to account for all of the limitations assessed by Dr. Higgins and Dr. Anderson. Dkt. 19 at 11-12. Those arguments will not be addressed a second time. But Ms. Tappon also argues that the ALJ's RFC assessment fails to incorporate all of the limitations assessed by State agency psychological consultant Alex Fisher, Ph.D. Tr. 711-14. Ms. Tappon notes that Dr. Fisher checked boxes indicating that she had moderate limitations in her ability to: complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; and respond appropriately to changes in the work setting. Tr. 713. Yet the ALJ did not include any restrictions addressing "impaired pace, a need for additional breaks, difficulty with the general public or inability to adapt to work changes" in the RFC assessment, and Ms. Tappon contends that this amounts to error. Dkt. 19 at 12.

The ALJ indicated that he afforded partial weight to Dr. Fisher's Mental RFC Assessment ("MRFCA") opinion, rejecting only the finding that Ms. Tappon required a "quiet environment" in order to carry out detailed instructions. Tr. 35 (citing Tr. 714). Ms. Tappon has not shown that the ALJ erred in focusing on the narrative comments provided by Dr. Fisher, rather than the checkbox portion of the form opinion, because ALJs are directed to use the narrative, not checkbox, part of the form opinion when rendering an RFC assessment. *See* Program Operations Manual System DI 25020.010 at B.1 ("The purpose of [the checkbox section] . . . on the [MRFCA] is chiefly to have a worksheet to ensure that the psychiatrist or

REPORT AND RECOMMENDATION - 10

psychologist has considered each of these pertinent mental activities and the claimant's or beneficiary's degree of limitation for sustaining these activities over a normal workday and workweek on an ongoing, appropriate, and independent basis. It is the narrative written by the psychiatrist or psychologist in section III . . . of [the MRFCA] that adjudicators are to use as the assessment of RFC.").[5]

Ms. Tappon also points out that the ALJ himself found at step three that she had moderate limitations as to concentration, persistence, and pace (Tr. 24), and argues that the ALJ erred in not including any related restrictions in the RFC assessment.  Ms. Tappon's argument confuses step-three findings with an RFC assessment.  *See* Social Security Ruling 96-8p, 1996 WL 374184, at *4 (Jul. 2, 1996) ("The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments[.]").  Thus, the ALJ's decision is not internally inconsistent simply because his RFC assessment does not account for his step-three findings, because step-three findings are not intended to constitute an assessment of RFC.

Because Ms. Tappon has not identified any errors (beyond the error identified in the

---

[5] Ms. Tappon raises an additional challenge to Dr. Fisher's opinion in the Reply Brief, arguing that somehow error results from Dr. Fisher's failure to explicitly mention Dr. Anderson's opinion, and that the State agency's affirmation of Dr. Fisher's opinion was unexplained and thus erroneous.  Dkt. 21 at 6-7.  Ms. Tappon does not explain how or why either of these alleged errors is actually erroneous or prejudicial, and because they were raised for the first time on reply, these alleged errors are waived.  *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n.8 (9th Cir. 2009) ("[A]rguments not raised by a party in an opening brief are waived.").

REPORT AND RECOMMENDATION - 11

previous section, regarding Dr. Higgins's opinion) in the ALJ's RFC assessment, she has not shown that the ALJ erroneously omitted limitations from the RFC assessment or the hypothetical posed to the VE. But to the extent that the ALJ's reassessment of Dr. Higgins's opinion requires reformulation of the RFC assessment, the ALJ shall do so on remand.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings.

On remand, the ALJ shall reassess Dr. Higgins's opinion and further reassess Ms. Tappon's RFC assessment in light of Dr. Higgins's opinion, if necessary.

A proposed order accompanies this Report and Recommendation. Objections, if any, to this Report and Recommendation must be filed and served no later than **March 11, 2014 (14 days)**. If no objections are filed, the matter will be ready for the Court's consideration on **March 12, 2014**. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed eight pages. The failure to timely object may affect the right to appeal.

DATED this 25th day of February, 2014.

                            BRIAN A. TSUCHIDA
                            United States Magistrate Judge